UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA KELLEY,

           Plaintiff,                  Case No. 2:20-cv-12710
                                       District Judge George Caram Steeh

v.                                     Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

           Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND (ECF No. 12), DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 14), and REMAND THIS MATTER TO THE COMMISSIONER

**I.**    **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary

judgement or remand (ECF No. 12), **DENY** Defendant's motion for summary

judgment (ECF No. 14), and **REMAND** this matter to the Commissioner for a

written decision that complies with 20 C.F.R. § 404.1529 and SSR 16-3p.

**II.**    **REPORT**

      Plaintiff, Lisa Kelley, brings this action under 42 U.S.C. § 405(g) for review

of a final decision of the Commissioner of Social Security (Commissioner)

denying her application for disability insurance (DI) benefits.  This matter is before

the United States Magistrate Judge for a Report and Recommendation on

Plaintiff's motion for summary judgment or remand (ECF No. 12), the

Commissioner's cross-motion for summary judgment (ECF No. 14), Plaintiff's

reply (ECF No. 15), and the administrative record (ECF No. 10).

### A.    Background and Administrative History

#### 1.    Prior application

In June 2005, Plaintiff filed an application for DI benefits, but, in September

2005, it was denied at the initial level.  (ECF No. 10, PageID.113.)  Plaintiff

appeared and testified at a November 2007 hearing.  (*Id*., PageID.129.)  On

February 14, 2008, ALJ Anthony B. Roshak determined that from April 26, 2005

through May 30, 2006 Plaintiff had the severe impairment of Crohn's disease and

"lacked [RFC] to perform even sedentary work on a sustained competitive 40 hour

basis due to Crohn's disease."  (ECF No. 10, PageID.113, 132-134.)

#### 2.    Instant application

The matter currently before the Court concerns Plaintiff's August 2018

application for DI benefits, wherein Plaintiff alleges her disability began on June 1,

2018, at the age of 49.  (ECF No. 10, PageID.211-212.)  In her disability report,

she lists several conditions (Crohn's disease, possible lupus or drug induced

autoimmune disorder, and kidney stones) as limiting her ability to work.  (*Id*.,

PageID.253.)

2

Plaintiff amended her onset date to August 1, 2018.  (ECF No. 10, PageID.75, 113, 209-210, 213.)  This seems to have occurred because, following her aforementioned closed period of disability, Plaintiff "returned to her previous job as a medical assistant, and then a medical clerk and continued full-time SGA level work through August 1, 2018 . . . ."  (*Id.*, PageID.62-63 (citing *id.*, PageID.213, 231-232, 274, 306).)

Plaintiff's application was denied in November 2018.  (*Id.*, PageID.112-123, 139-156.)  She requested a hearing by an Administrative Law Judge (ALJ).  (*Id.*, PageID.158-159.)  On October 7, 2019, ALJ Patricia S. McKay held a hearing, at which Plaintiff and a vocational expert (VE), Kelly Herron Stroker, testified.  (*Id.*, PageID.71-111, 303, 306.)  On November 14, 2019, ALJ McKay issued an opinion which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.*, PageID.54-70.)

Plaintiff submitted a request for review of the hearing decision/order.  (*Id.*, PageID.207-208.)  However, on August 10, 2020, the Appeals Council denied Plaintiff's request for review.  (*Id.*, PageID.43-48.)  Thus, ALJ McKay's decision became the Commissioner's final decision.  Plaintiff timely commenced the instant action on October 6, 2020.  (ECF No. 1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 697 pages of medical records, seemingly dated from March 2015 to September 2019.  (ECF No. 10, PageID.41-42, 310-1006 [Exhibits B1F-B13F].)  These records were available to the ALJ at the time of her November 14, 2019 decision (*id*., PageID.54, 69-70)and will be discussed in detail, as necessary, below.

### C.    The November 14, 2019 Administrative Decision

Pursuant to 20 C.F.R. § 404.1520(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 2018, the alleged onset date.  (ECF No. 10, PageID.59.)  At **Step 2**, while specifically acknowledging that the prior ALJ determination only found severe Crohn's disease, the ALJ found that Plaintiff had the following severe impairments:  Crohn's disease <u>and</u> seronegative / rheumatoid arthritis.  (*Id*., PageID.60-61, 132.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id*., PageID.61-62.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity (RFC)[1] and determined that Plaintiff had the RFC:

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.

4

> . . . to perform sedentary work as defined in 20 CFR 404.1567(a) [*i.e., exertional limitations*] except the claimant can occasionally climb stairs and ladders, and occasionally crouch, crawl, kneel, stoop and bend [*i.e., postural limitations*]. The claimant can frequently engage in grasping/gross manipulation and fingering/fine manipulation with the bilateral upper extremities [*i.e., manipulative limitations*].

(*Id.*, PageID.62-65.)  At **Step 4**, the ALJ determined that Plaintiff was capable of performing past relevant work "as a <u>medical receptionist</u>, D.O.T 237.367-038, semi-skilled, SVP of 4, sedentary per the D.O.T and as performed by the claimant."  (*Id.*, PageID.65-66 (emphasis in original).)  Accordingly, the ALJ determined that the sequential evaluation was complete at step four.  (*Id.*, PageID.66.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from August 1, 2018, through the date of the decision.  (*Id.*, PageID.66.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see*

---

20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

*also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence

6

standard, "'a decision of the Commissioner will not be upheld where the SSA [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.   Analysis

#### 1.   RFC

Plaintiff's first statement of error challenges the accuracy of the ALJ's RFC determination (*see* 20 C.F.R. §§ 404.1520(e), 404.1545 & SSR 96-8p).  (ECF No. 12, PageID.1020-1025.)

#### a.   Review of records dated July 2018 – September 2019

Within the RFC determination, the ALJ expressly mentioned records dated July 18, 2018 through September 19, 2019, including CT scans and x-rays.  (*Id.*, PageID.63-64, 318-325, 329, 333, 335, 338, 541, 802-803, 852-853, 855, 857-858, 892-893, 914, 997-998, 1002.)  Ultimately, the ALJ claimed to have thoroughly reviewed the evidence, including "the objective medi[c]al findings[.]"  (ECF No. 10, PageID.65.)

Plaintiff argues that the ALJ "failed to create an accurate [RFC] . . . [,]" *i.e.*, the ALJ "failed to include the full picture of limitations caused by the Plaintiff's Crohn's disease and seronegative / rheumatoid arthritis[,]" in some cases

7

referencing Plaintiff's testimony.  (ECF No. 12, PageID.1020-1021; *see also id*., PageID.1023-1024.)  Also, Plaintiff claims that "abdominal pain and joint pain as well as fatigue noted throughout the records would cause difficulty focusing and trouble concentrating."  (ECF No. 12, PageID.1024 (citing ECF No. 10, PageID.318, 329, 335, 340, 346, 352, 802, 804, 806, 813, 855, 857, 859, 920, 997).)  To the extent this statement concerns Plaintiff's complaints, the ALJ's treatment of her subjective symptoms (*i.e.*, the ALJ's compliance with 20 C.F.R. § 404.1529, SSR 16-3p) will be addressed below.

More importantly, Plaintiff's motion does not appear to challenge the accuracy of the ALJ's review of records dated July 18, 2018 through September 19, 2019.  (*Id*., PageID.63-64.)  In her reply, Plaintiff contends that "the bulk of the reports that state Plaintiff's Crohn's disease is in remission are *prior to* the end of August of 2018 . . . ."  (ECF No. 15, PageID.1050 (emphasis added).)  The ALJ expressly acknowledged, albeit without attribution, rheumatologist Samir Yahia, M.D.'s July 18, 2018 notes, in which the history of present illness acknowledges "a diagnosis of Chron's [sic] disease currently in remission (no flare up for the past 3 years) with Entyvio every 2 months for the past 4 years[,]" (ECF No. 10, PageID.63, 318).  (ECF No. 15, PageID.1050.)

Keeping in mind Plaintiff's August 1, 2018 alleged onset date, Plaintiff's reply points to records dated August 2018, such as:  (i) Dr. Yahia's August 2, 2018

8

notes, which reflect that "[t]he presence of positive anti histone antibodies suggest[s] possibility of drug-induced ANA [antinuclear antibody] Anna or drug-induced lupus[,]" (*id.*, PageID.333); (ii) HF Macomb Emergency's August 23-24, 2018 records, when Plaintiff presented with "intermittent generalized 6/10 abdominal pain that initially onset 3 weeks ago[,]" and where the treater "[d]iscussed elevated WBC is likely secondary to acute crohn flare and steroid use[,]" (*id.*, PageID.335, 338, 439, 442); and, (iii) Inge Hanschu, P.A.C.'s August 21, 2018 and August 28, 2018 records (*id.*, PageID.804-805, 806-807). (ECF No. 15, PageID.1050.) (*See also* ECF No. 10, PageID.810-811 [08/09/2018], 808-809 [08/17/2018].)

Plaintiff continues by citing Dr. Peleman's later-dated records as they relate to the effects of her Entyvio and Methotrexate regimen, for example:

- September 4, 2018 notes, which include a diagnosis of "Crohn[']s ile[o]colitis, fistulazing disease status post multiple bowel resections, with superimposed small intestinal bacterial overgrowth," and a plan to finish ciprofloxacin prescription, continue prednisone (taper as able), and stop Entyvio for one infusion in October (*id.*, PageID.802-803);

- November 7, 2018 records, which reflect "doubt drug induced lupus . . . [,]" with a plan to restart Entyvio (*id.*, PageID.859-860);

- February 28, 2019 notes, which reflect that, since Plaintiff re-started Entyvio, "she reports recurrence of joint pain, pleur[i]sy pain and fatigue[,]" and which reflect a plan to continue

9

Entyvio, add methotrexate, and continue prednisone (although taper off of it in 3 weeks) (*id*., PageID.857-858);

- April 11, 2019 records, when the plan included continuation of current medications (*id*., PageID.855-856); and,

- August 8, 2019 notes, which reflect:  (i) methotrexate was discontinued after Plaintiff started to experience dyspnea; (ii) diagnoses of "Crohn's ileitis, fistulizing with history of resection [status post] ileocolonic anast[o]mosis - currently in remission (clinical and endoscopic CFL 2017) on entyvio" and "seronegative arthritis[;]" and, (iii) a plan to continue Entyvio and resume methotrexate (*id*., PageID.852-854).

(ECF No. 15, PageID.1050-1051.)

However, the ALJ reviewed records dated September 2018 to August 2019. (*See* ECF No. 10, PageID.63-64.)  Notably, the ALJ remarked on several "recent" records, including – although without reference to date or author – gastroenterologist Dr. Peleman's August 8, 2019 notes.  The ALJ's express reliance on this "recent" note, which reflected that Crohn's was "currently in remission" (ECF No. 10, PageID.853), undermines Plaintiff's concern that most notes reflecting Crohn's "in remission" pre-date the alleged onset date of August 1, 2018.  Plaintiff's suggestion that the ALJ disregards her worsening Crohn's symptoms is unavailing, and any disbelief by the ALJ as to Plaintiff's Crohn's symptoms is addressed below.  (ECF No. 15, PageID.1051.)

### b.   Opinion evidence

Plaintiff's RFC argument includes reference to the ALJ's treatment of the

Family Medical Leave Act (FMLA) forms (*see* ECF No. 12, PageID.1021-1023),

which are a type of opinion evidence.  Where, as here, the application for benefits

was filed on or after March 27, 2017, the Social Security Administration's (SSA's)

treatment of medical opinions and prior administrative medical findings is

governed by 20 C.F.R. § 404.1520c, which provides that the SSA "will articulate

in our determination or decision how persuasive we find all of the medical

opinions and all of the prior administrative medical findings in your case record."

20 C.F.R. § 404.1520c(b).  Of particular import is the explanation that the

supportability and consistency factors . . .

> . . . are the most important factors we consider when we determine
> how persuasive we find a medical source's medical opinions or prior
> administrative medical findings to be.  Therefore, we will explain how
> we considered the supportability and consistency factors for a medical
> source's medical opinions or prior administrative medical findings in
> your determination or decision.

20 C.F.R. § 404.1520c(b)(2).

In Plaintiff's case, the ALJ explained that she "considered the medical

opinion(s) and prior administrative medical finding(s) in accordance with the

requirements of 20 CFR 404.1520c[,]" and claimed to have thoroughly reviewed

the evidence, including "forms completed at the request of Social Security" and

"medical opinions[.]"  (ECF No. 10, PageID.62, 65.)

### i.      FMLA forms (re: Crohn's flares)

The medical evidence of record contains what appear to be two

"Certification of Health Care Provider for Employee's Serious Health Condition

(Family and Medical Leave Act)" forms, each apparently associated with Dr.

Peleman's office (Macomb Gastroenterology).   One is signed by physician

assistant Hanschu and dated May 8, 2017 (ECF No. 10, PageID.314-317), and the

other is dated February 8, 2018 but signed illegibly (*id.*, PageID.310-313).   With

respect to these documents, the ALJ articulated as follows:

> The record contains a health care provider certification form in
> support of the claimant's FMLA (Family and Medical Leave Act)
> application in February 2018 that indicates the claimant would be
> unable to work during flare-ups of the Crohn's symptoms because of
> diarrhea and abdominal pain, but this form does not address the
> frequency or duration (B1F/3 [ECF No. 10, PageID.312]).   The
> certification completed by a physician assistant in May 2017 indicates
> the frequency at one time every three months, lasting 1-4 days each
> occurrence (B1F/7-8 [*id.*, PageID.316-317]).   Both forms are limited
> to a six-month duration, so *for that reason* they are not persuasive as
> opinion of work related functioning during the relevant period.   Even
> if they were not time-limited, the evidence as discussed above does
> not show the claimant has had uncontrolled flares of the Crohn's
> disease during this period.   In fact, the flares noted were due to
> changes in medication and quickly resolved with adjustments.   Her
> provider has assessed the Crohn's as clinically and endoscopic[al]ly in
> remission.

(ECF No. 10, PageID.65 (emphasis added).)

The ALJ was not entirely accurate about the time limitation.   True, she

accurately noted that each of these forms was "limited to a six-month duration,"

12

(*see* ECF No. 10, PageID.65, 316, 312), and the May 2017 form would have "expired" in November 2017.  However, the later form – dated February 8, 2018 – would not have "expired" until August 8, 2018, *i.e.*, seven days after the amended AOD of August 1, 2018.  In fact, Plaintiff alluded to this point in her December 23, 2019 letter to the Appeals Council.  (*See* ECF No. 10, PageID.307.)  Thus, discounting the February 8, 2018 form as "time-limited" is questionable.

Nonetheless, the ALJ also observed that the February 8, 2018 form lacked detail as to frequency or duration of Plaintiff's episodic flare-ups.  (ECF No. 10, PageID.312.)  The ALJ continued by observing that, even if the forms were not time-limited, the evidence did not show "uncontrolled flares of the Crohn's disease during this period[,]" presumably the relevant period, which began on August 1, 2018.  In this regard, the ALJ's observation that "the flares noted were due to changes in medication and quickly resolved with adjustments[,]" is presumably a reference to her discussion of the status of Plaintiff's Crohn's symptoms with respect to Entyvio and ciprofloxacin (Cipro), if not also her discussion of the status of Plaintiff's arthralgia and fatigue with respect to gabapentin, prednisone, and Methotrexate.  (ECF No. 10, PageID.63-64.)  Also, the ALJ's statement that Plaintiff's "provider has assessed the Crohn's as clinically and endoscopic[al]ly in remission[,]" is supported by Dr. Peleman's August 8, 2019 diagnosis (ECF No.

10, PageID.853).[2]   (ECF No. 10, PageID.64.)  Therefore, it is at least clear the ALJ

considered the supportability and/or consistency factors when concluding that the

FMLA forms were "not persuasive."  20 C.F.R. § 404.1520c(1),(2).

Plaintiff claims the ALJ's "logic is flawed for a variety of reasons."  (ECF

No. 12, PageID.1021.)  To begin, she advocates that, "together with the updated

evidence of record," such as her October 7, 2019 testimony, the "applications and

certifications from Dr. Peleman bolster [her] statements concerning the nature and

degree of her worsened impairments[,]" and Plaintiff suggests that the FMLA

forms are consistent with the record.  (*Id*., PageID.1021-2022.)  Further, Plaintiff

explains that, because she was no longer working during the relevant period, she

"no longer required FMLA paperwork to be re-certified[.]"  (*Id*.)  Finally, as to

"uncontrolled flares of the Crohn's disease," Plaintiff contends that "the medical

records show ongoing complaints of diarrhea and abdominal pain along with

numerous bathroom breaks, even when on medication."  (ECF No. 12,

PageID.1022-1023 (citing ECF No. 10, PageID.801-802, 804, 806, 818, 821,

855).)  When arguing that her symptoms confirm that "her Crohn's disease is not

entirely under control on medication . . . [,]" and that "there has been no

---

[2] Moreover, the Court observes that Dr. Peleman's February 28, 2019 notes
acknowledge "in remission while on Entyvio[,]" (ECF No, 10, PageID.857), and
Violette F. Henein, M.D.'s September 19, 2019 notes suggest that Plaintiff's
Crohn's disease was "in remission for 4 years on Entyvio[,]" (*id*., PageID.998-
999).

'significant' improvement despite medication[,]" Plaintiff cites as examples the Henry Ford Macomb Emergency records dated August 24, 2018, when Plaintiff presented with abdominal pain (ECF No. 10, PageID.335) and the Macomb Gastroenterology's August 21, 2018 records, which reflect that Plaintiff was taking Entyvio (*id.*, PageID.806).  (ECF No. 10, PageID.1022-1023.)

Plaintiff claims the ALJ's RFC assessment "ignores Plaintiff's bad days from flare ups, and severe symptoms, as well as time needed for frequent bathroom breaks, that are also noted in the FMLA paperwork by Dr. Peleman," (ECF No. 12, PageID.1023), and claims her testimony about "numerous bathroom breaks throughout the day" finds "substantial support by way of her routine complaints to her doctors as evidenced throughout the medical records."  (ECF No. 12, PageID.1024 (citing ECF No. 10, PageID.802, 823, 825, 827, 859).)  Yet the ALJ's review of the medical evidence noted that, "[t]he gastroenterologist restarted the Entyvio and when she presented for follow-up on February 28, 2019, she reported significant improvement; she was having only 1-2 stools per day and had no abdominal pain, bloody stool, fever/chills, night sweats or nocturnal symptoms[,]" (*id.*, PageID.64), and Dr. Peleman's notes from that date state, *inter alia*:  "Her Crohn's disease is controlled on Entyvio, having 1-2 stools a day.  No abdominal pain, no blood in stool, no fever/chills, no night sweats, no nocturnal symptoms[,]" (*id.*, PageID.857).  As the Commissioner points out, "[t]here may be

15

some evidence supportive of Plaintiff's claim, and Plaintiff may disagree with the result, but this is not a reason for remand." (ECF No. 14, PageID.1045.) "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). In Plaintiff's case, "there was more than enough evidence to support the ALJ's finding" as to the FMLA forms, *Jones*, 336 F.3d at 477, but how the ALJ's error regarding the February 8, 2018 form's time limitation affected her decision is nonetheless unclear.

### ii.   Robert Nelson, M.D. (state agency medical consultant)

On November 13, 2018, Dr. Nelson opined that Plaintiff could occasionally and frequently lift and/or carry 10 pounds, could stand and/or walk for a total of 2 hours, could sit for a total of about 6 hours in an 8-hour workday, and could push and/or pull "unlimited, other than shown, for lift and/or carry[,]" *i.e.*, Dr. Nelson opined that Plaintiff is capable of work at the sedentary exertional level (ECF No. 10, PageID.117-118, 120), which is consistent with the sedentary exertional limitation assessed by the ALJ (*id*., PageID.62).

The ALJ found Dr. Nelson's opinion "partially consistent with the record as a whole . . . ." (ECF No. 10, PageID.65.) Specifically, the ALJ articulated:

16

> The limitation to sedentary level work is *supported* when one considers the combination of Crohn's flares with some abdominal pain, reports of upper and lower joint pain (but with normal exam findings) and some fatigue.  However, subsequent medical evidence essentially ruled out a drug induced autoimmune medically determinable impairment and she had improvement of the shortness of breath as the lung infection/inflammatory process improved, such that the opined limited exposure to pulmonary irritants is *not well supported*.

(*Id*. (emphases added).)  Having offered this explanation and having identified Dr. Nelson as the "state agency medical consultant," it is clear the ALJ considered the supportability, consistency, and/or relationship factors in determining that "the opinion as a whole is not persuasive."  *See* 20 C.F.R. § 404.1520c(c)(1),(2),(3).

To the extent Plaintiff's motion challenges the ALJ's statement about shortness of breath and pulmonary irritants (ECF No. 12, PageID.1027-1029), it will be addressed below within her challenge to the ALJ's treatment of subjective symptoms.  Meanwhile, in her reply, Plaintiff points out that Dr. Nelson did not have the benefit of records post-dating his November 13, 2018 report, such as those demonstrating "the significant effects of being off the Entyvio" and "the negative side effects of the methotrexate" or "the symptoms . . . she experienced upon restarting . . . Entyvio . . . ."  (ECF No. 15, PageID.1052.)  Preliminarily, it is evident that Dr. Nelson was able to review records dated September 2018 and October 2018, as listed in the Disability Determination Explanation (DDE) under "evidence of record."  (ECF No. 10, PageID.113-115.)  I acknowledge that Dr.

17

Nelson would not have had the benefit of notes reflecting: (a) the November 7, 2018 decision to restart Entyvio and prescribe Zofran (ECF No. 10, PageID.859-862); (b) the February 28, 2019 continuation of Entyvio, addition of methotrexate, and continuation of prednisone (although tapering off of it in 3 weeks) (*id.*, PageID.857-858); (c) the April 11, 2019 continuation of current mediations and initiation of Xifaxin (*id.*, PageID.855-856); and, (d) the August 8, 2019 continuation of Entyvio and resumption of methotrexate (*id.*, PageID.852-853). (ECF No. 10, PageID.63-64.) Nonetheless, even if Dr. Nelson did not have access to the November 2018 to August 2019 records, the ALJ expressly reviewed these records, and Plaintiff's statement that "the ALJ erred when she relied on [Dr. Nelson's] opinion . . ." does not show error in the ALJ's consideration of records that post-date Dr. Nelson's opinion. Indeed, the Sixth Circuit has recognized that there will "always be a gap between the time the agency experts review the record and give their opinion . . . and the time the hearing decision is issued." *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009). The ALJ may rely on such opinions as long as the record reflects that he or she has considered the entire record. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 513 (6th Cir. 2010). This record so reflects.

## 2.   Evaluation of symptoms

Although Plaintiff refers to her testimony throughout her challenge to the accuracy of the ALJ's RFC determination, it is within her second statement of error that Plaintiff specifically challenges the ALJ's "evaluation of the Plaintiff's subjective symptoms . . . ."  (ECF No. 12, PageID.1025-1029.)  The applicable regulation explains that the SSA considers "all . . . symptoms, including pain, and the extent to which . . . symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. §§ 404.1529(a), 416.929(a).  (*See* 20 C.F.R. § 404.1529, SSR 16-3p.)

In her November 14, 2019 RFC discussion, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [the alleged] symptoms are *not entirely consistent* with the medical evidence and other evidence in the record for the reasons explained in this decision."  (ECF No. 10, PageID.62 (emphasis added).)[3]  The ALJ then proceeded to expressly mention records dated July 18, 2018 through September 19, 2019 (*id*., PageID.63-64), after which she observed:

> The claimant had a good work history.  While she alleges she is
> unable to work because the treatment regimen that controls her

---

[3] The Court's own review reveals the SSA's Disability Determination Explanation (DDE) reached a similar conclusion – *i.e.*, Plaintiff's statements regarding symptoms were "partially consistent" with "the total medical and nonmedical evidence . . . ."  (ECF No. 10, PageID.117.)

Crohn's causes joint pain, and when the joint pain is controlled with medications, she has Crohn's flares, the medical evidence as discussed above is not supportive.  It is true that she had the exacerbations as alleged, but it appears from the record that both *the Crohn's symptoms and joint pain have improved significantly with medication adjustments*.  Further, *there is little objective support for the fatigue*.

(ECF No. 10, PageID.64-65 (emphases added).)

### a.   20 C.F.R. § 404.1529(c)(3) ("Consideration of other evidence.")

Plaintiff recognizes "the deferential standard of review of an ALJ's determination of the limitations due to pain and other subjective symptoms . . . ." (ECF No. 12, PageID.1026.)  *See* SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017) (amended notice) (eliminating use of the term "credibility" from official policy and clarifying that a "subjective symptom evaluation is not an examination of an individual's character."); *Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017) (noting that under SSR 16-3p, "an ALJ must focus on the consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility"), *report and recommendation adopted by* 2018 WL 494523 (S.D. Ohio Jan. 22, 2018).  *See also Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) ("an administrative law judge's credibility findings are virtually 'unchallengeable.' ") (citing *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 112–13 (6th Cir. 2010)).

Nonetheless, Plaintiff claims the ALJ "improperly evaluated the intensity, persistence, and limiting effects of the Plaintiff's physical symptoms[,]" namely fatigue, shortness of breath, Crohn's symptoms, and joint pain.  (ECF No. 12, PageID.1027-1029.)  *See* 20 C.F.R. § 404.1529, SSR 16-3p.  Clearly referring to the subsection concerning "consideration of other evidence," 20 C.F.R. § 404.1529(c)(3), Plaintiff also claims "the ALJ failed to properly consider the seven factors . . . ."  (ECF No. 12, PageID.1029.)

### b.    Plaintiff's Function Report and Testimony

Aside from Plaintiff's reports to her doctors, Plaintiff's subjective symptoms are reflected in at least two other portions of the administrative record.  First, on October 5, 2018, Plaintiff completed a function report, which is an SSA form that seeks information regarding, *inter alia*, illnesses, injuries, or conditions, daily activities, and abilities.  (ECF No. 10, PageID.266-273.)  For example, when asked to provide information about her illnesses, injuries, or conditions, Plaintiff noted:

> My Crohn's has gotten really bad, I have constant/frequent flares, I have extreme pain, I have accidents, I would be in the bathroom 20 times or more a day, I've been taken off all my meds because I have joint pain & swelling, extreme fatigue, weakness, they are trying to figure out what's causing it.  I have to take 2 naps a day.

(*Id*., PageID.266.)  Also, when asked to provide information about daily activities, Plaintiff wrote:

> I have joint pain, swelling that is severe in morning, the pain & stiffness continues all day.  My Crohn's flares several days out of the

21

week where I am in the bathroom 20 or more times a day.  I have to
nap several times a day.

(*Id.*, PageID.267.)

Second, Plaintiff testified at the October 7, 2019 administrative hearing.

(*Id.*, PageID.71-111.)  Among other things, Plaintiff testified that her attendance

was "very poor," even before she stopped working.  (*Id.*, PageID.79.)  She would

"try to go to work[,]" "get to work[,]" "end up in the bathroom[,]" and "was away

from [her] desk most of the day, you know, probably between five and six hours."

(*Id.*)  She was "usually in there 30, maybe 45 minutes[,]" and, sometimes she

"would come out, sit down, start [her] work and [she would] have to run back to

the bathroom . . . and they'd tell [her] to go home . . . ."  (*Id.*)  Sometimes she

would miss days of work for joint pain, other days she would miss work because

she "had been up all night in the bathroom and couldn't get it under control and

was afraid to go in."  (*Id.*)  She also testified that her attendance and leaving early

episodes became really significant "probably about a, a month" before August

2018.  (*Id.*, PageID.80.)  She further testified that she has "no energy level at this

point[,]" explaining that "some days [she] can't even get out of bed, [she's] just so

tired.  If [she] do[es], [she]'ll have to take a nap sometimes twice a day just to feel

like [she] can do something, spend time with [her] husband."  (*Id.*, PageID.81.)

Plaintiff claims that her testimony about poor attendance and frequency and

extent of bathroom use is "persuasive" because the testimony is "consistent with

and supported by substantial evidence, including reports from Dr. Peleman and accompanying medical evidence." (ECF No. 12, PageID.1023.) Citing her Function Report, Plaintiff claims "she needs to use the bathroom frequently and could be in there for more than 20 times per day." (ECF No. 12, PageID.1024 (citing ECF No. 10, pageID.266).) Plaintiff contends this "would cause [her] to be excessively off-task and absent . . . ." (*Id.*, PageID.1024.) Plaintiff also contends that the ALJ's analysis lacks "a proper discussion of the Plaintiff's testimony . . . ." (ECF No. 12, PageID.1029.)

The ALJ did not expressly cite either Plaintiff's function report or her administrative hearing testimony, although the ALJ did acknowledge that Plaintiff "appeared and testified at a hearing held on October 7, 2019 . . . [,]" (*id.*, PageID.57); however, the ALJ does indicate that Plaintiff "reported" or "alleges," (*see* ECF No. 10, PageID.62-64), and, ultimately, the ALJ claims to have "thorough[ly] review[ed]" Plaintiff's "allegations and testimony," (*id.*, PageID.65). Thus, I now consider whether the ALJ properly evaluated Plaintiff's claims of fatigue, shortness of breath, Crohn's symptoms, and joint pain.

### c.    Fatigue

The ALJ acknowledged mention of fatigue in medical records dated November 2018, February 2019, and April 2019, after which she stated, "there is little objective support for the fatigue." (ECF No. 10, PageID.63-65; *see also id.*,

23

PageID.859-960, 858, 855.)  Plaintiff argues this finding is "against the weight of the evidence."  (ECF No. 12, PageID.1027-1028.)

Plaintiff contends her reports of fatigue are "extensively documented throughout the record."  (*Id*., PageID.1027; ECF No. 10, PageID.318, 346, 352, 812, 813, 830, 855, 858, 859, 920, 997.)  Plaintiff further contends that, "despite being off of work and compliant with her medication," she "notes fatigue in her Function Report several times, even reporting that she requires two naps a day as a result of her fatigue."  (*Id*., PageID.1027-1028 (citing ECF No. 10, PageID.266-267, 271).)  She also points to her testimony regarding fatigue – *i.e.*, "she has no energy" and "at times she feels that she cannot get out of bed and needs two naps a day."  (*Id*., PageID.1028 (citing ECF No. 10, PageID.81).)  Moreover, the Court notes Plaintiff's testimony, "some days I don't even feel like I can get out of bed.  I just want to sleep the entire . . . day."  (ECF No. 10, PageID.93.)

As to the ALJ's treatment of Plaintiff's fatigue, Plaintiff has the better argument.  In fact, the Commissioner admits it is "unclear" what the ALJ meant by the statement that "there is little objective support for the fatigue[,]" (ECF No. 10, PageID.65).  (ECF No. 14, PageID.1046.)  True, the Commissioner correctly notes "the ALJ did account for some level of fatigue in the RFC[,]" (ECF No. 14, PageID.1046), by:  (i) determining that Plaintiff was exertionally limited to sedentary work (ECF No. 10, PageID.62); and, (ii) when evaluating the state

24

agency medical consultant's opinion, explaining that, "[t]he limitation to sedentary level work is supported when one considers the combination of Crohn's flares with some abdominal pain, reports of upper and lower joint pain (but with normal exam findings) and some fatigue[,]" (*id.*, PageID.65).  Also, the ALJ cited Plaintiff's April 2019 statement that, since starting Methotrexate, "her arthralgias have improved along with her fatigue."  (*Id.*, PageID.64, 855.)  However, the lack of clarity as to the ALJ's statement that there was little *objective* support for Plaintiff's fatigue, coupled with the ALJ's apparent failure to consider either Plaintiff's function report (*id.*, PageID.266-273) or her administrative hearing testimony (*id.*, PageID.78-106), each of which touches upon fatigue, convinces the Undersigned that the ALJ did not appropriately evaluate Plaintiff's "daily activities[,]" or at least created a material ambiguity as to whether she did.  20 C.F.R. § 404.1529(c)(3)(i).

### d.    Shortness of breath (*i.e.*, a symptom of pleurisy)

Violette Henein, M.D.'s September 19, 2019 diagnoses included shortness of breath.  (ECF No. 10, PageID.997-1001.)  At the October 7, 2019 administrative hearing, Plaintiff testified that she "started with this shortness of breath about three months ago and they took me off the methotrexate, thinking that it could be causing the shortness of breath . . . ."  (*Id.*, PageID.83-84.)  Plaintiff also testified

that she was scheduled to have a follow up visit with Dr. Henein on the 16th "to figure out . . . the shortness of breath and everything else." (*Id.*, PageID.103-104.)

The ALJ's opinion acknowledged Plaintiff's treatment for pleurisy, concluded this condition was "non-severe," but still expressly considered: (i) the August 2019 chest CT, which reflects that "[t]he previously described interstitial infiltrate in the right upper lobe of the lung [was] nearly completely resolved[,]" (*id.*, PageID.893, 914); (ii) albeit without attribution, Violette F. Henein, M.D.'s September 19, 2019 rheumatology exam, which revealed, *inter alia*, that Plaintiff's lungs were "clear to auscultation bilaterally," but also diagnosed shortness of breath (ECF No. 10, PageID.998); and, (iii) the September 19, 2019 normal chest, normal thoracic spine, and normal lumbar spine imaging (ECF No. 10, PageID.1002-1003). (*Id.*, PageID.60, 64.)

Plaintiff challenges the ALJ's statement that Plaintiff "had improvement of the shortness of breath as the lung infection/inflammatory process improved, such that the opined limited exposure to pulmonary irritants is not well supported[,]" (ECF No. 10, PageID.65). (ECF No. 12, PageID.1027.) In support of her argument that the ALJ's statement is not accurate, Plaintiff contends her shortness of breath "continues to be noted in the medical records up to at least September of 2019." (*Id.*, PageID.1028 (citing ECF No. 10, PageID.340, 373, 379, 385, 391, 398, 482, 830, 896, 920, 927, 939, 991, 997).) For example, Plaintiff points to

26

August 22, 2019 pulmonary consultation notes, wherein Rajindar Sikand, M.D. noted Plaintiff's shortness of breath but stated it is "[m]ore likely" a "systemic manifestation of her underlying autoimmune disease." (ECF No. 10, PageID.991, 995; ECF No. 12, PageID.1028.) Still, even considering Dr. Henein's September 19, 2019 shortness of breath diagnosis – *i.e.*, "doubt related to autoimmune disease as her lungs and heart are normal[,]" and "suspect allergy related like bronchial asthma[,]" (ECF No. 10, PageID.999) – Plaintiff's past relevant work as a medical receptionist does not involve exposure to wetness and/or humidity, vibration, atmospheric conditions, or hazards. *Dictionary of Occupational Titles*, 237.367-038 (Receptionist), 1991 WL 672192. (ECF No. 14, PagID.1042.)[4] Accordingly, any error in this regard would be harmless.

### e. Crohn's symptoms (*e.g.*, abdominal pain) and joint pain

In her October 2018 function report, when asked about daily activities, Plaintiff responded, *inter alia*, that her Crohn's flares "several days out of the week where [she] [is] in the bathroom 20 or more times a day." (ECF No. 10,

---

[4] Incidentally, the ALJ's and Dr. Nelson's RFC assessments differ with respect to postural and environmental limitations. (*Compare* ECF No. 10, PageID.62; *with, id.*, PageID.117-119.) Still, as with the environmental aspects of Plaintiff's past relevant work, the postural aspects of such work describe climbing, balancing, stooping, kneeling, crouching, crawling as "not present – activity or condition does not exist." *Dictionary of Occupational Titles*, 237.367-038 (Receptionist), 1991 WL 672192.

PageID.267.)  Plaintiff also reported blood pressure and vision side effects from

prednisone (*id.*, PageID.273), although her November 2018 appellate disability

report lists "none" as the side effect(s) for multiple medications (*id.*, PageID.286).

At the October 2019 administrative hearing, Plaintiff testified that she

stopped working in August 2018, because "[her] Crohn's ha[d] gotten much worse.

[She] started having severe joint pain/swelling.  [She] was going to the bathroom

15/20 times a day."   (ECF No. 10, PageID.78; *see also id.*, PageID.81.)  Plaintiff

testified that, over the past year, she uses the restroom from ten to twenty-five

times per day.  (ECF No. 10, PageID.84.)  She stopped working in 2018,

seemingly because she would "have to leave the desk to go to the bathroom for too

long . . . [,]" was "constantly away from [her] desk in the bathroom . . . or not there

at all[,]" so "they hired someone else to help [her], but [she] still couldn't carry

[her] weight . . . ."  (*Id.*, PageID.98-99.)  Ultimately, the ALJ asked:

> What about, let's say this person gets to work like Ms. Kelley told us
> she was able to get to work, but she ended up taking breaks let's say,
> oh, throughout the day in addition to the traditional breaks in the
> morning and afternoon one, she's taking up to 15 minutes every hour
> due to her situation and needing to use the bathroom, how does that
> affect her ability to do the jobs or any jobs?

(*Id.*, PageID.108.)  The VE answered:  "That would be work-preclusive, in my

opinion."  (*Id.*)

The ALJ determined that Plaintiff's Crohn's disease and seronegative /

rheumatoid arthritis were severe but did not meet the criteria of Listing 5.06 or

28

Listing 14.09 (ECF No. 10, PageID.60-62), cited records that mentioned reports of pain, including instances of waxing, waning or absence (*id.*, PageID.63-64), and ultimately stated:  "It is true that she had the exacerbations as alleged, but it appears from the record that both the Crohn's symptoms and joint pain have improved significantly with medication adjustments[,]" (*id.*, PageID.64-65).

Plaintiff contends the ALJ's statement is "entirely unsupported by substantial evidence."  (ECF No. 12, PageID.1027.)

### i.   Medication

Preliminarily, the ALJ did consider medication – *e.g.*, Entyvio (vedolizumab), Gabapentin, prednisone, Cipro (ciproflaxin), Bentyl, and Methotrexate.  (ECF No. 10, PageID.63-64.)  The ALJ also expressly considered drug-induced lupus, with reference to:  (i) an August 2, 2018 rheumatology note that "[t]he presence of positive anti histone antibodies suggest possibility of drug-induced ANA Anna or drug-induced lupus[,]" (*id.*, PageID.333); and, (ii) the September 4, 2018 gastroenterology note, which reflected, "[a]rthraligias, doubt drug induced lupus[,]" (*id.*, PageID.803).  (ECF No. 10, PageID.63.)  Moreover, the ALJ noted:

> Although the claimant's Crohn's symptoms were well managed on the biologic medication Entyvio, the treating rheumatologist discontinued the medication in November 2018 because of suspected drug induced Lupus and side effects that caused (or exacerbated) the claimant's joint pain, pleurisy and fatigue. The Crohn's symptoms worsened once the Entyvio was discontinued and while she had some

improvement with antibiotic medication and prednisone therapy, she was significantly more symptomatic than she had been on the Entyvio regimen.

(ECF No. 10, PageID.63-64; *see also* ECF No. 859-960.)  These observations are evidence that the ALJ considered "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms[.]"  20 C.F.R. § 404.1529(c)(3)(iv).

### ii.    Daily activities

According to Plaintiff, her need for excessive restroom breaks and her inability to maintain CPP are supported by the cumulative effect of her diarrhea, abdominal pain, and joint pain, which are "noted throughout the records, and while improvement is found at some times, her symptoms continue to wax and wane even with medication and certainly produce vocationally relevant limitations that were not accounted for by the ALJ in her decision."  (*Id*., PageID.1029 (citing ECF No. 10, PageID.318, 329, 335, 352, 403, 438, 524, 802, 804, 806, 812, 818, 821, 823, 825, 827, 833, 855, 857, 859, 997).)

The Commissioner argues that the ALJ "appropriately evaluated Plaintiff's subjective complaints."  (ECF No. 14, PageID.1045-1046.)  However, as to the ALJ's treatment of Plaintiff's Crohn's symptoms and joint pain, Plaintiff is more convincing.  Even if the ALJ intended to account for joint pain by assessing an exertional limitation of sedentary work, the written decision seems devoid of any

30

reference to "restroom" or "bathroom."  This omission, coupled with the ALJ's apparent failure to consider Plaintiff's function report (*id*., PageID.266-273) or to identify any of her specific administrative hearing testimony (*id*., PageID.78-106), each of which touches upon her need for the bathroom, suggests that the ALJ did not appropriately evaluate Plaintiff's "daily activities."  20 C.F.R. § 404.1529(c)(3)(i).  If the ALJ discounted Plaintiff's function report or testimony as being exaggerated or inconsistent with the record as to Crohn's symptoms, it is unclear to this subsequent reviewer why that is so.  Coupled with the VE's testimony, the need to be away from her work station multiple times and for possibly extended periods each day is material to her ability to work on a sustained basis and requires further analysis.

## F.    Conclusion

The ALJ determined that Plaintiff was capable of work at the sedentary exertional level – the *most restrictive* exertional classification, 20 C.F.R. § 404.1567(a) – and further determined that Plaintiff was capable of performing past relevant work "as a medical receptionist," which was "sedentary per the D.O.T and as performed by the claimant."  (*Id*., PageID.62, 65-66 (emphasis in original).)  Plaintiff challenges the accuracy of the RFC determination and the evaluation of Plaintiff's symptoms.  (ECF No. 12, PageID.1019-1029.)  Plaintiff has the burden of proof on her statement(s) of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d

31

525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").

As detailed in the foregoing discussion, while Plaintiff has not shown reversible error regarding the ALJ's records review (Section E.1.a) or treatment of the opinion evidence (Section E.1.b), Plaintiff has shown legal error as to the ALJ's evaluation of her subjective symptoms, namely as to fatigue (Section E.2.c) and Crohn's symptoms (*e.g.,* abdominal pain, the increased need for bathroom breaks) and joint pain (Section E.2.e). Accordingly, it is **RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary judgment or remand (ECF No. 12), **DENY** Defendant's motion for summary judgment (ECF No. 14), and **REMAND** this matter to the Commissioner for a written decision that complies with 20 C.F.R. § 404.1529 and SSR 16-3p, including the factors for "consideration of other evidence." Upon remand, the ALJ should provide a detailed discussion of Plaintiff's function report, hearing testimony, and subjective complaints, including but not limited to: (1) fatigue; (2) Crohn's symptoms, such as the need for and frequency of bathroom breaks; and, (3) the side effects of her various medications in conjunction with prescription changes and any resulting fluctuations in the symptomology of Plaintiff's Crohn's Disease. *See* Section II(E)(2). Finally, the ALJ should revisit her discounting of the February 8, 2018 health provider form as

time-limited, *see* Section II(E)(1)(b)(i) above, and indicate whether the form's

August 8, 2018 expiration in any way changes the persuasiveness afforded to it.[5]

## III.  PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must precisely recite the provision of this Report and

---

[5] While the Court recognizes that the ALJ stated that "even if [the forms] were not
time-limited, the evidence as discussed above does not show the claimant has had
uncontrolled flares[,]" the ALJ also stated that, "[b]oth forms are limited to a six-
month duration, so *for that reason* they are not persuasive as opinion of work
related functioning during the relevant period." (ECF No. 10, PageID.65 (emphasis
added).)

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated:  June 24, 2022

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE